# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON

**CIVIL ACTION NO. 12-19-DLB-CJS**

**FRED OTTO**                                                                     **PLAINTIFF**

**VS.**              <u>**MEMORANDUM OPINION & ORDER**</u>

**CITY OF NEWPORT**                                          **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Plaintiff brought this employment discrimination action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 629, and an analogous provision of Kentucky law, K.R.S. § 344.040. Plaintiff alleged that Defendant City of Newport unlawfully terminated him from his position as a police officer due to his age.

Defendant has moved for Summary Judgment (Doc. # 21), asserting that Plaintiff had not established the necessary elements for an age discrimination claim. Plaintiff responded to that motion (Doc. # 22), and Defendant replied in kind (Doc. # 23). The motion is now ripe for review.

Because there is no evidence that Plaintiff was qualified for the position, and no direct evidence of Defendant's discriminatory intent, for the reasons set forth below, the Court will grant Defendant's motion for summary judgment.

## II. FACTUAL BACKGROUND

Plaintiff Fred Otto is a career police officer who has held positions with the University

1

of Missouri, Northern Kentucky University, Miami University, City of Highland Heights, and the State of Kentucky. (Doc. # 21-1, at 5-6). All told, Plaintiff has more than 21 years of experience as a police officer. *Id.*

On December 1, 2010, Plaintiff began work as a Patrol Officer IV with the City of Newport Police Department. (Doc. # 22, at 1). At the time, he was 57, and there was some expectation that he would help the department submit grant applications. (*Id.* at 1-2). However, Plaintiff knew that he would "probably have to do some things with patrol" when he accepted the position. (Doc. # 24-1, at 9). When he was hired, Plaintiff was asked to sign an acknowledgment form, stating that he was aware of K.R.S. § 33.09, which mandated retirement for police officers when they reached the age of 60. (Doc. # 24-1). Unlike the other two new hires, Plaintiff was not entitled to an incentive bonus because he had not completed a required training course at nearby Northern Kentucky University. (Doc. # 22, at 10). Plaintiff believes that both his exclusion from the incentive bonus and the acknowledgment form evidence discrimination.

Immediately after starting, Plaintiff struggled with the weapons qualification components of the Newport Police Department's training. Plaintiff failed to pass the required practical test with either the ASP or PR 24 police baton. (Doc. # 24-1, at 37). In a letter dated December 20, 2010, Sgt. Floyd Combs indicated that Plaintiff was unable to properly use the Glock 19 firearm. (Doc. #21-10). These struggles were rooted in Plaintiff's inability to quickly fire and reload the weapon. (Doc. # 21-4). Plaintiff's inability to use the weapon, wrote Combs, "may result in death or serious physical injury, to himself or others." (*Id.*). Plaintiff does not dispute his weapons qualifications failures, but instead maintains that he could have qualified with the weapons had he been given more remedial

2

training. (Doc. #1, at 3). Plaintiff was given some remedial training, (Doc. # 21-10), but apparently not enough.

Plaintiff claims that City Manager Thomas Fromme expressed his disinterest in "old cops" working for Newport. (Doc. # 1, at 3). Shortly thereafter, on December 21, 2010, Plaintiff was terminated from his position. (Doc. # 22-5). On May 18, 2011, Plaintiff filed a complaint with the Equal Employment and Opportunity Commission (EEOC). (Doc. # 1, at 2; Doc. #26-2, at 59-60). The EEOC chose not act on Plaintiff's claim. (Doc. # 24-1, at 8). Plaintiff subsequently filed this action on January 20, 2012. (Doc. # 1).

### III. ANALYSIS

#### A. Standard of Review

Plaintiff asserts that the federal summary judgment standard is "not as broad as the Kentucky standard," and further claims that the Court should apply the state law standard for summary judgment. Whatever the merits of Plaintiff's arguments about the breadth of the different standards, it is clear that the Court should apply the federal standard for summary judgment. As the Sixth Circuit has noted, "under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal law governs procedural issues." *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 425-26 (6th Cir. 2009). The standard for granting summary judgment is undoubtedly a procedural issue: "Summary judgment practice in federal district courts is controlled by Rule 56, unaffected by state procedural rules." *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 917 (6th Cir. 1982).

Under the federal rules, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law." Fed.R.Civ.P. 56(c). In practice, this means that summary judgment is appropriate when a party, having had adequate time for discovery, fails "to make a showing sufficient to establish the existence of an element essential to the party's case." *Celotex Corp. v. Catrett*, 477 U.S.317, 322 (1986). *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir.1989) (holding that a movant may meet his burden "by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."). Two questions must thus be answered: First, what are the elements of the Plaintiff's claim? And second, is there at least a shred of evidence to support each of the essential elements of the Plaintiff's claim?

> **B.    Plaintiff has failed to satisfy all the elements of a prima facie case of age discrimination.**

The ADEA outlaws employment discrimination against a person "because of such individual's age." 29 U.S.C. § 623(a)(1). Interpreting that provision, the Supreme Court has identified four essential elements to a prima facie age discrimination claim under the ADEA. To establish a prima facie case, Plaintiff must show by a preponderance of the evidence that 1) he is at least 40, and thus within the purview of the ADEA, 2) he was either discharged or demoted, 3) he was qualified for his job, and 4) that a younger person filled the position. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

After Plaintiff establishes the prima facie case, Courts will presume that Plaintiff was discriminated against, unless Defendant can then prove that it had a legitimate, non-discriminatory reason for terminating the Plaintiff. *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000). If Defendant provides a legitimate, non-discriminatory reason, Plaintiff can

still succeed on the claim if he shows that Defendant's allegedly non-discriminatory motive is a pretext. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 592 (6th Cir. 2003). Here, there is no dispute that Plaintiff was more than 40 at the time of his termination, that he was discharged from employment, and that he was replaced by a younger officer on the police force. The first, second, and fourth elements of the prima facie case are satisfied. However, Plaintiff's inability to establish the third element is the death knell of his age discrimination claim. Because Plaintiff has failed to produce any evidence that he was qualified for the job, summary judgment is warranted.

Plaintiff's position with the police department was as a Patrol Officer IV. (Doc. # 24-1). Though there is some question about the exact nature of Plaintiff's work–whether, for example, Plaintiff would primarily write grants–Plaintiff was hired as a police officer and knew as much. (*See* Doc. # 24-1, at 9) ("I mean, I always–I knew I'd be wearing–probably have to do some things with patrol, but my main goal was to get them grants."). It is undisputed that such a position requires certain abilities, among them proficiency with law enforcement weapons.

The fundamental flaw in Plaintiff's claim is that he has failed to offer any convincing evidence that he showed proficiency with either the Glock handgun or the police batons. In fact, by Plaintiff's own admission, he failed some of the necessary tests. (Doc. # 24-1, at 37). Further, a letter from Police Chief Robbie Hall indicates that Plaintiff failed repeatedly to meet the department's standards for firearms proficiency. (Doc. # 21-10). These failings continued, even after remedial training. (Doc. # 21-10).

Instead of rebutting this evidence, Plaintiff maintained during his deposition that he couldn't recall whether he had qualified with the Glock 19 handgun and couldn't recall the

5

number of hours of remedial training he received. (Doc. # 24-1, at 33-34). This may very well be true. But in the face of a mountain of evidence that Plaintiff failed to qualify with standard police weapons, Plaintiff offers nothing to the contrary. Based on the record before the Court, there is simply no issue of material fact here: Plaintiff did not meet the police department's standards for handling these weapons.

Because he failed to meet those standards, Plaintiff was not qualified and cannot establish the third element of a prima facie case. The Sixth Circuit has held that, "[T]he prima facie burden of showing that a plaintiff is qualified can ... be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler*, 317 F.3d at 575-76 (citations omitted). It is difficult to imagine how a man who fails to qualify with deadly weapons used in the line of duty has met the "minimum objective criteria required for employment."

*Highfill v. City of Memphis*, 425 F. App'x 470 (6th Cir. 2011), an unpublished Sixth Circuit case, illustrates this fact well. Though that case involved a firefighter suing for alleged racial discrimination, the principle applies here: unless a claimant meets job certification requirements, he cannot establish a prima facie discrimination case. In *Highfill*, the plaintiff was a firefighter who lost his job because he failed to pass the written component of Memphis's "Firefighter II certification exam." *Highfill*, 425 F. App'x at 472. After his termination, the plaintiff argued that African American firefighters were given more remedial training. *Id.* at 474. This preferential treatment allegedly violated civil rights laws.

Applying the same four-part prima facie test at issue in this case, the Sixth Circuit held that because the plaintiff had failed to pass the firefighter certification exam, he was

6

not qualified for his position. *Id.* at 473-474. Consequently, under *Wexler*, the plaintiff could not establish a prima facie age discrimination claim. *Id.* at 474. The Sixth Circuit therefore upheld the district court's grant of summary judgment. *Id.* at 476.

It's impossible to square the *Highfill* holding with Plaintiff's claim here. Handling firearms is a condition of employment as a police officer. Plaintiff claims repeatedly that he was "overqualified" for the position. (*See, e.g.*, Doc. # 22, at 1). But Plaintiff can point to no legal authority that prior experience in one position establishes qualification in a different position. Based on the record, there is little doubt that Plaintiff was a hardworking and capable employee in prior police departments. However, there is equally little doubt that Plaintiff failed to establish his qualifications for employment with the Newport Police Department.

Under *Cox*, all elements of the prima facie case must be satisfied. Although Plaintiff meets the first, second, and fourth elements, he fails on the third element. For that reason he cannot make out a prima facie case. Consequently, summary judgment is warranted.

**C.     Plaintiff has failed to provide any direct evidence of discrimination.**

"The Sixth Circuit also recognizes an alternative test .... If the plaintiffs can establish direct evidence of discrimination, then they need not go through the *McDonnell Douglas* burden-shifting analysis." *Rowan v. Lockheed Martin Energy Sys.*, Inc., 360 F.3d 544, 548 (6th Cir. 2004). Direct evidence is that which proves the existence of discrimination without requiring any inferences. *Id.* Under *Rowan*, a court may find age discrimination even if a claimant has not satisfied the elements of the prima facie case, so long as there is direct evidence of discrimination. *Id.*

7

Though Plaintiff never relies explicitly on this "direct evidence" case law, he does point to numerous instances of the City's alleged discrimination. Plaintiff asserts the following: Plaintiff's hiring sparked controversy because he exceeded the statutory maximum for new police officers; City Manager Fromme stated that he did not want any "old cops" on the force; and Plaintiff was made to sign an acknowledgment that the mandatory retirement age was 60. (Doc. # 22, at 13-14).

Even if all of these things were true, they hardly constitute "direct evidence" of discrimination. In *Rowan*, the plaintiff alleged that his superiors had said on a golf course that "...older people should go." *Rowan*, 360 F.3d at 549. While the Circuit noted that such statements are cause for concern, it found that "one stray statement allegedly made seven years before the adverse decisions obviously cannot count as direct evidence of unlawful age-bias." *Id.*

If "stray statements" don't suggest direct discrimination, then none of Plaintiff's proffered facts evidence direct discrimination. When Plaintiff was hired, the Fraternal Order of Police (FOP) objected to his hiring, on the basis of Plaintiff's advanced age, which exceeded the statutory maximum under Kentucky Law. (Doc. # 25-1, at 5). City Manager Fromme hired Plaintiff anyway, as he believed that the statute applied only to new hires, not those with years of prior police experience. (*Id.* at 6). The only thing this shows is that the FOP objected to Plaintiff's hiring; it says nothing about the motives of the city manager–the man who actually does the hiring and firing.

Similarly, the acknowledgment form and the alleged statements about "old cops" do not directly show discrimination. The acknowledgment form did nothing but make Plaintiff aware of the City's mandatory retirement policy. A factfinder could easily view this as an

8

effort to help the Plaintiff–by making him aware of city policies that might affect him. A factfinder might also consider this fact evidence of age discrimination. Regardless, it is not "direct evidence" as defined in *Rowan*. The "old cops" statement, if true, raises some concerns regarding Defendant's motives. But it is not the kind of statement that is obviously discriminatory. The city manager did not, for instance, tell the Plaintiff that he was being let go because he was too old. Had Plaintiff met the prima facie case, it might have been reasonable for a jury to infer discriminatory motives from the city manager's statements. But it would have required an inference, and that additional step means that the statement was not direct evidence of discrimination under *Rowan*.

For the reasons stated above, there is no evidence of direct discrimination. Accordingly, the alternative *Rowan* test does not save Plaintiff's ADEA claim.

### D. Plaintiff's pretext claims are immaterial.

Plaintiff argues that the failed training justification for his termination was nothing but "pretext" for discriminatory intent. But for a pretext showing to be at all relevant, Plaintiff must first establish the prima facie case. Under *Wexler*, after Plaintiff establishes the prima facie case, the burden shifts to the Defendant to show that termination was motivated by a non-discriminatory purpose. *Wexler*, 317 F.3d at 576-77. Only then can Plaintiff show that the proffered reason was pretextual, thus defeating Defendant's non-discriminatory purpose defense.

Here, Plaintiff has failed to establish the prima facie case. So questions of pretext do not affect the Court's analysis. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–61 (6th Cir.2000) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must

examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.").

E. **Plaintiff's other arguments fail to buttress the age discrimination claim.**

Plaintiff points to other facts that allegedly suggest misconduct on behalf of Defendants. Plaintiff was apparently ineligible for an incentive bonus that other new police officers received, because he hadn't completed the requisite training. (Doc. # 22, at 10). That Plaintiff's colleagues completed this training (and were thus eligible for the incentive pay), while Plaintiff had not is irrelevant to the age discrimination claim. Plaintiff doesn't even try to argue that this incentive pay policy was implemented for discriminatory reasons. It neither provides direct evidence of discrimination, nor buttresses Plaintiff's prima facie case.

Additionally, Plaintiff argues that the FOP felt threatened by Plaintiff, fearing that his qualifications made him a prime candidate for chief of police. (Doc. # 22, at 15). This says nothing about the Defendant's alleged discriminatory motives. In fact, it suggests that age had nothing to do with Plaintiff's termination. Plaintiff's arguments suggest, at most, that he was pushed out because he was a threat to the career ambitions of other officers. This might very well be an inappropriate reason to fire someone. Yet even if the Court accepted Plaintiff's allegations wholesale, they have nothing to do with age discrimination.

F. **Plaintiff's Kentucky law claim fails for the same reasons cited above.**

In addition to federal law claims under the ADEA, Plaintiff also asserts state law discrimination claims under K.R.S. § 344.040. (Doc. # 1, at 4). Those claims fail for the same reason the federal law claims fail. The Kentucky Supreme Court "has consistently interpreted the civil rights provisions of KRS Chapter 344 consistent with the applicable

10

federal anti-discrimination laws." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) (citing *Brooks v. Lexington Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 802 (Ky.2004)). In *Williams*, the Kentucky Supreme Court made clear that there is no difference between Kentucky law and federal law on this issue. *Id.* at 495. There are "two paths" for proving an age discrimination claim. *Id.* Either Plaintiff can provide direct evidence of "discriminatory animus," *see id.*, or must prove each element of the prima facie case under *McDonnell Douglas*.

For the reasons already noted, Plaintiff cannot prove either, so his state law claim also fails.

### IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) Defendant's Motion for Summary Judgment (Doc. # 21) is hereby **GRANTED**;

(2) All of Plaintiff Otto's federal and state age discrimination claims are hereby **DISMISSED WITH PREJUDICE**.

This 23rd day of October, 2013.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\Covington\2012\12-19 MOO granting SJ for Defendant.wpd